**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JUAN IRIZARRY-VAZQUEZ**, <br><br> Plaintiff, <br><br> v. <br><br> **HOGAR LA MISERICORDIA, ET AL.**, <br><br> Defendants. | CIVIL NO. 13-1388 (PG) |

**OPINION AND ORDER**

The court entered default against defendant Hogar La Misericordia (hereinafter "the Hogar") on February 10, 2014 and held an evidentiary hearing on October 6, 2014. The Hogar failed to appear to said hearing and Plaintiff's testimony was heard. The court therefore makes the following findings of fact and conclusions of law holding the Hogar liable to the Plaintiff in the amount of $40,0000.00 for the damages inherited from his deceased father and $10,000.00 for his own emotional damages.

**I. BACKGROUND**

Plaintiff Juan Irizarry-Vazquez's alleged father, Tomas Rivera-Romero, was a resident of Hogar La Misericordia, an elderly-care facility located in Adjuntas, Puerto Rico. See Docket No. 1. Irizarry-Vazquez maintains that, while a resident of Hogar La Misericordia, his father suffered neglect and abuse that resulted in his hospitalization and, ultimately, his death in May of 2012. On May 16, 2013, Irizarry-Vazquez filed this suit against the Hogar and the Municipality of Adjuntas for his own damages as well as those inherited from his father. The Municipality of Adjuntas moved to dismiss and its request was granted. See Dockets No. 14, 22. Partial judgment was entered accordingly. see Docket No. 23. On October 6, 2014, the court held a hearing on damages during which the Plaintiff testified.

**II. FINDINGS OF FACT**

The court takes the following facts from the complaint, the Plaintiff's testimony at the default hearing and the documentary evidence presented therein.[1]

---

[1] During the hearing, the Plaintiff waived his right to a trial by jury.

    The Plaintiff first clarified at the hearing that although the deceased was indeed his biological father, the latter never recognized the Plaintiff as his son, reason for which they do not have the same last name. According to the Plaintiff, he was his father's only son.

    Although the Plaintiff resides stateside, he testified that he came to visit his father once or twice a year and that they were very close. After living with Plaintiff's stepbrother for many years, Plaintiff's father was admitted to the Hogar on or around May of 2010. According to the Plaintiff, his father refused to move in with him and leave the Island, so the Plaintiff paid for the Hogar until his father's passing in May of 2012. During this time, the Plaintiff claims he maintained regular communication regarding his father's well-being with the Hogar's staff, as well as with his stepbrother's wife, who used to take care of his father before being moved into the Hogar.

    According to Irizarry-Vazquez, when he came to visit in 2011, he noticed a bandage on his father's foot and inquired about it to the Hogar's nurses. According to them, his father had a bedsore and a home care provider had come in to cure it. The following year, on or about March of 2012, the Plaintiff learned that his father fell while taking a bath and had a black and blue mark on his face. However, his father was not taken to see a doctor at that time. A month later, the Hogar notified the Plaintiff that his father was not doing well, that he had high blood pressure and was disoriented. The Plaintiff learned that paramedics had visited the Hogar and stabilized his father. After this event, his father suffered from slurred speech, decreased appetite and forgetfulness. According to the Plaintiff, a doctor went to see the Plaintiff's father at the Hogar on April 27, 2012. After the doctor's visit, the Plaintiff was informed that his father was taken to the hospital because he was suffering from diarrhea, fever and was disoriented. At the hospital, it was discovered that Plaintiff's father had multiple bedsores and was malnourished. Eventually, his father's left leg had to be amputated because of the bedsores he developed. However, Plaintiff's father passed away on May 16, 2012.

    Despite his father's state of health, the Plaintiff could not travel to Puerto Rico to visit his ailing father before his death because his wife had cancer and had just undergone chemotherapy. Nevertheless, the times they spoke on the phone, the Plaintiff perceived his father was hurting and unhappy. The Plaintiff later came to his funeral and buried his father. Irizarry-Vazquez testified that he was angry and heartbroken at his father's death and developed medical ailments himself after the ordeal.

Civil No. 13-1388 (PG)                                                    Page 3

### III. DISCUSSION

In this diversity suit, the substantive law of Puerto Rico controls. The Puerto Rico Civil Code, in pertinent part, provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Article 1802 thus provides for a cause of action stemming from an individual's negligent acts. See Isla Nena Air Servs., Inc. v. Cessna Aircraft Co., 449 F.3d 85. 88 (1st Cir. 2006).

"Liability turns on three basic elements: (1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a causal nexus between the injury and the defendant's act or omission (i.e., proximate cause)." Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 109 (1st Cir. 2012) (citing Vázquez–Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir.2007)). "[A] defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." Vazquez-Filippetti, 504 F.3d at 49 (citing Ortiz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973))

In Puerto Rico, the tort of wrongful death gives rise to two separate causes of action recognized under Article 1802. Firstly, "a decedent's heirs may recover for the decedent's pain and suffering prior to death." Rolon-Merced v. Pesquera, No. CV 14-1757 (DRD), 2016 WL 1261055, at *7 (D.P.R. Mar. 30, 2016) (citing Gonzalez Rodriguez v. Alvarado, 134 F.Supp.2d 451, 454 (2004)). Therefore, "damages for the conscious pain and suffering of plaintiff's decedent prior to his death, as opposed to damages for his immediate death, are recoverable in a wrongful death negligence cases." Rolon-Merced v. Pesquera, 2016 WL 1261055 at *7 (citing Vda. de Delgado v. Boston Ins. Co., 101 P.R. Dec. 598, 603 (1973)). "This action is known as a 'survivorship action.'" Cason v. Puerto Rico Elec. Power Auth., 770 F.3d 971, 974 (1st Cir. 2014).

"The second type of tort action recognized under Article 1802 of the Puerto Rico Civil Code is the personal action that corresponds exclusively and by own right to the decedent's relatives … who personally suffers damages by virtue of the decedent's death, regardless of status as an heir." Id. at 975 (citing Widow of Delgado v. Boston Ins. Co., 1 P.R. Offic. Trans. 823, 825, 101 P.R. Dec. 598, 602 (1973); Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 47 (1st Cir.2009); Hernández v. Fournier, 80 P.R. Dec. 93, 98–99 (1957)).

"[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its [ ] claims must be considered established as a matter of law." Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir.1985). "A hearing may be required, however, to set damages when the amount is in dispute or is not ascertainable from the pleadings." In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002) (citations omitted). The "paramount focus in reviewing the damage award must be the evidence presented at trial." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 16 (1st Cir. 2005) (internal quotations omitted).

Default against the Hogar was entered on February 10, 2014. See Docket No. 19. Therefore, the allegations regarding the Hogar's negligence and liability are not in question. As to damages, the Plaintiff testified as to his own, as well as his father's pain and suffering prior to his premature death after becoming ill from his bedsores. These damages are the result of the Hogar's breach of its duty of care towards Plaintiff's father, a service for which the Plaintiff had been paying for two years.

In the discharge of this court's task to determine the dollar amount of damages supported by the evidence, "the [c]ourt notes that while losing a family member before their time is always tragic, losing a parent of a somewhat advanced age is different from cases involving the untimely death of a young parent or the death of a child." Martinez-Alvarez v. Ryder Mem'l Hosp., Inc., No. 09-2038 JP, 2010 WL 3431653, at *7 (D.P.R. Aug. 31, 2010) (granting motion for remittitur and reducing jury award to children of deceased victim). The Plaintiff testified he was sixty-six years old at the time of the hearing, thus, he must have been sixty-four years old at the time of his father's death two years prior. Therefore, the Plaintiff's father was of advanced age at the time of his death and the Plaintiff had the opportunity to spend his childhood and several decades as an adult with his father.

"[A]nother relevant fact is that [plaintiff] spent most of his life geographically separated from his father." Martinez-Alvarez, 2010 WL 3431653 at *7. Irizarry-Vazquez stated that he left his home and went on his own to the United States Marine Corp in 1968, that is, forty-four years before his father's death. And although Plaintiff claims he remained close to his father, the closeness was physically limited by his own admissions. In fact, because he was

Civil No. 13-1388 (PG)                                                    Page 5

away, the Plaintiff was barely able to describe his father's own suffering during the latter's hospitalization.[2]

In the case at hand, the Plaintiff did not testify as to how this event has prevented him from leading a normal life, other than expressing great anger and perfunctorily mentioning that his health became affected after the event that brings about the present claim. Neither did the Plaintiff testify that he had to seek psychological treatment to cope with the loss of his father.

Upon consideration of the uncontested evidence presented, the court concludes that the Hogar is liable to the Plaintiff in the amount of $10,000.00 for his own emotional damages, and $40,000.00 for the damages suffered by his father prior to his death and inherited by the Plaintiff as the asserted sole heir.

### IV. CONCLUSION

For the reasons stated above, this court awards a total of $50,000.00 in damages payable to the Plaintiff. Judgment against the Hogar shall be thus entered.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 21, 2016.

                                         S/ JUAN M. PÉREZ-GIMÉNEZ
                                         JUAN M. PÉREZ-GIMÉNEZ
                                         UNITED STATES DISTRICT JUDGE

---

[2] In terms of Mr. Rivera-Rimero's damages, the court does recognize from its own life experiences that a three-week hospitalization that included a leg amputation must have been agonizing. However, the Plaintiff's testimony to that effect was very limited and the court must adjudge the damages based on the evidence presented. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir.1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.").